## SAMUEL P. WALKER

### *v.*

## THE CITY OF CHICAGO.

1. CONSTRUCTION OF STATUTES. Where the intent is plain to confer a privilege upon those whose rights are to be affected by a statutory proceeding in derogation of the rights of property, and the language is doubtful as to the extent of the privilege, it is the duty of courts to give to it the largest construction in favor of the privilege which the language employed will fairly permit.

2. ASSESSORS, BOARD OF, *in Chicago — of the duration of their sessions — construction of the city charter.* So the provision in the charter of the city of Chicago, which, after requiring the board of assessors to fix a day for their meeting to revise and correct the assessments, declares that "they shall continue in session during the business hours of each and every secular day for a period of twenty successive days," must be construed as meaning twenty successive secular days.

3. EVIDENCE — *in suit for taxes, in city of Chicago.* In a suit, under the charter of the city of Chicago, for taxes, the defendant objected that the real estate tax list, which, with the warrant attached thereto, was the basis of the suit, was not a copy of the tax list as revised by the board of assessors ; that the list as revised, and after the time fixed by statute for its revision had expired, was changed, amended, abated and altered; and that the warrant was materially altered after it was received by the city collector : *Held,* it was competent for the defendant to inquire of the collector and tax commissioner, called by him as witnesses, as to their knowledge of such alterations, whether or not any had been made ; whether the list and warrant had been so changed as to the description and valuation of any of the property in any respect, and if so, what changes had been made. Such material alteration might have been made as would vitiate the tax of the defendant, and the *onus probandi* being on him, he had the right to prove it. If abuses had crept in, from which the tax lists were altered after the revision was completed, no matter by whom done, the defendant had the right, and it was the duty of the court to permit him, to investigate and expose them. Such inquiries were competent for the purpose of showing that alterations had been made, so affecting the rights of the defendant as to require the production of the original books, assessment roll and warrant to complete the proof, and to lay the proper foundation for their compulsory production; and if the books were already in court, then as preliminary to the investigation.

APPEAL from the Superior Court of Chicago; the Hon. JOSEPH E. GARY, Judge, presiding.

The opinion states the case.

Mr. JOHN BORDEN and Mr. JOHN P. WILSON, for the appellant.

Mr. M. F. TULEY, for the appellee.

Mr. JUSTICE McALLISTER delivered the opinion of the Court:

This was a suit, under the charter of the city of Chicago, for taxes of 1869. Judgment was rendered by the superior court, against the property of appellant, upon the warrant returned by the city collector, in a sum exceeding $25,000.00, and the case is brought here by appeal. The importance of the case is apparent.

To the recovery of the judgment the appellant filed, among others, in apt time, the following objections:

1st. That the real estate tax list for the year 1869, and which, with the warrant thereto attached, is the basis of this suit, is not a copy of the tax list for said year as revised by the board of assessors.

2d. Said tax list was changed, amended, abated and altered after the said board of assessors had ceased to meet as required by law.

3d. The tax warrant was materially altered after it was received by the city collector.

Upon the hearing, appellant's counsel called the city collector as a witness, and interrogated him as to whether that real estate tax list, with the warrant attached, was in the same condition as it was when he received it? Whether or not any changes had been made in the said real estate tax list and warrant attached, after they came into his hands? Whether the tax list and warrant had been changed as to the description and

valuation of the property in any respect, and in respect to any of the property, since they came into his hands? and, if so, what changes had been made? Whether any person out of his office, and not connected with it, had been allowed by him, or those under his charge, to make any correction in the warrant, or alteration. To these questions and others of a similar tendency, the corporation counsel interposed a general objection, which the court sustained, and appellant's counsel excepted.

These questions, it will be perceived, were all directed to alterations made after the warrant was received by the collector, and, of course, after the whole amount to be raised by taxation had been fixed by the common council, the amount apportioned by the city clerk, and the sum against each parcel of property extended. In such case, the materiality of an alteration might be different from that of an alteration made at any time between the close of the period prescribed by statute for the revision of assessments by the board of assessors and that of the apportionment by the clerk.

The statute requires the board of assessors to fix a day for their meeting to revise the assessments, and declares that "they shall continue in session during the business hours of each and every secular day for the period of twenty successive days." Appellant's counsel insist that this means twenty successive days, including Sundays. We think it is to be construed as meaning twenty successive secular days. Not to give it this construction would be to abridge a privilege intended for the benefit of property owners. Where the intent is plain, to confer a privilege upon those whose rights are to be affected by a statutory proceeding, in derogation of the rights of private property, and the language is doubtful as to the extent of the privilege, it is the duty of courts to give to it the largest construction, in favor of the privilege, which the language employed will fairly permit. The time fixed by the board for the revision to commence was the 1st of September, 1869. They met, as the evidence shows, on that day, and on

280    WALKER *v.* THE CITY OF CHICAGO.    [Sept. T.,

Opinion of the Court.

every business day between that, to and inclusive of the twenty-third, same month.

The tax commissioner, who is a member of that board, was called as a witness on behalf of appellant, and was asked to state whether or not any alterations, and, if so, what, were made in the assessors' books after the 23d of September, 1869? Whether or not the revised book or books of the assessors, as revised, are now in the same condition that they were immediately after the 23d day of September, 1869? These questions were likewise objected to by the corporation counsel; the objection was sustained by the court, and exception taken by appellant.

After the schedules of the assessors have been revised by the board of assessors, and the time of revision given by statute elapsed, it is the duty of the clerk, under the direction of the assessors, to transcribe the lists, with the valuation, into a book or books, with appropriate columns. When so transcribed, they are to be signed by the proper assessors, and then these books constitute the tax lists for that year. After the close of the twenty days for revision, no person or officer has any more right or authority to make alterations of the tax lists, or valuation, than of the amount of a judgment of a court after the close of the term at which it was rendered. When the amount to be raised by taxation is fixed, and the levy made by the common council, and the apportionment made as to each parcel of real estate in the tax list, and the proper warrant issued and attached to the proper lists, the amount of tax upon each parcel is deemed due and owing, and authority is given to make it of the goods and chattels of the respective owners. The evidence of the indebtedness, and process for its collection, together with all the proceedings through which the obligation was created, are in the possession of the appellee, its officers and agents. It has been the rigid and inflexible rule of the common law of England, at least since *Pigot's case*, 11 Rep. 27, that when any deed is altered in a point material, by the plaintiff himself, or by any stranger,

without the privity of the obligee, be it by interlineation, addition, rasing, or by drawing a pen through a line or through the midst of any material word, the deed thereby becomes void. The principle of this rigid rule, which has been somewhat relaxed in this country, is, that a party who has the custody of an instrument made for his benefit, is bound to preserve it in its original state ; and it has been said by the courts that it is highly important for preserving the purity of legal instruments, that this principle should be borne in mind, and the rule adhered to.

The importance of preserving the purity of the instruments of taxation is as great, if not greater, than in the case of contracts between individuals. If we were to hold that material alterations of the tax lists, before apportionment, and of the warrant and amount of taxes of the individual objecting, after they were received by the collector, did not vitiate, it would soon happen that honest men alone would bear the burden of city taxes. The statute itself, which provides for the twenty days to make revision by the board of assessors, declares that " thereafter no change, amendment, abatement or alteration shall be made, nor shall any tax or portion thereof be refunded."

We do not decide here as to what would be a material alteration that would vitiate the tax of any particular objector; but only that there may be such, and, if so, when the proper objection is made, the objector, being subject to the *onus probandi*, has the right to prove it. If abuses have crept in, from which tax lists are altered, after the revision is completed, no matter by whom done, the appellant had the right, and it was the undoubted duty of the court below to permit him, to investigate and expose them. If no such thing were true, why not permit the witnesses to answer and negative the implication of the questions ? The questions were entirely competent. It is but sticking in the bark, to say that it could be proved only by sworn copies of the originals. The questions were merely preliminary; and by excluding them the objector could get no

282        WALKER *v.* THE CITY OF CHICAGO.        [Sept. T.,

Opinion of the Court.

starting point. If he had had the sworn copies alluded to, in his pocket, he had a right to have these questions answered.

*Brier* v. *Woodbury*, 1 Pick. 362, was where an execution was altered after it was issued, by fraudulently inserting a direction to a constable, when it was originally directed to the sheriff. The execution being returned, it was objected that being a record, it was not competent to show the alteration by parol. PARKER, Ch. J., after stating the objection, said: " That it could not be doubted that any thing produced as a record may be shown to be forged or altered; if it were not so, great mischief might arise. That a record was conclusive, but what is or what is not a record is matter of evidence, and may be proved like other facts; otherwise there would be no remedy. On a plea of *nul tiel record*, the fact is to be judged of by the court, who, no doubt, would examine witnesses, upon a suggestion that there had been an interpolation; and, where the question comes up incidently, on an issue to a jury, the same species of evidence must be given to them." No doubt, but to complete the proof, the production of the original books, or roll and warrant, would be necessary. Suppose the books had been in court, so long as there could be no difficulty in the identification of the subject matter of the inquiry, would not the questions asked be proper as preliminary inquiries? And would not the objection go merely to the order of proof, which the court can not control, so long as it is competent and pertinent in other respects? Suppose these witnesses were cognizant of the fact, that the board of assessors, or some other officer, or a person, had, in fact, made alterations, as to the valuation of various parcels of property, upon the tax lists, after the time for revis ion, and before the apportionment was made, would not their statement of such alterations show, with sufficient certainty, that appellant's rights were affected by it, to require the production of the original books, assessment roll and warrant, if not already in court?

Such a mode of laying the foundation for their production is far more satisfactory than by affidavit, because, by the former

course, the appellee would have the benefit of cross-examination; by the latter, not.  If the books were in court, then the evidence was competent, as preliminary to the investigation. The tax list comprised eleven bulky books.  The knowledge of the collector and tax commissioner, of the books, might be requisite, to finding where the alterations were made.  If not in court, then it was competent to lay the proper foundation for their compulsory production.  To lay such foundation, when necessary, is a legal right.  The exclusion of the evidence tending to do so was a denial of that right, and was error.

We have fully considered the other points made, but do not think any of them well taken.

The judgment of the court below must be reversed and the cause remanded.

*Judgment reversed.*